IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARITZA ZAYAS-ORTIZ, et al.,**

**Plaintiffs,**

v.                                                       Civil No. 11-1507 (GAG)

**BECTON DICKINSON CARIBE, LTD., et al.,**

**Defendants.**

## OPINION AND ORDER

Maritza Zayas-Ortiz, ("Zayas"), her husband Jose Santiago-Sierra ("Santiago") and the conjugal partnership composed by them (collectively "Plaintiffs") bring this action against Becton Dickinson Caribe, Ltd., Becton Dickinson Puerto Rico, Inc. and Becton, Dickinson & Co. ("Defendants"), alleging discrimination based on age and national origin, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq;* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Plaintiffs also bring supplemental state law claims alleging violations of Puerto Rico Law 80 of May 30, 1976 ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185a *et seq.*; Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. Laws Ann. tit. 29, §§ 146 *et seq.*; and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 & 1803"), P.R. Laws Ann. tit. 31, §§ 5141-5142.

Presently before the court is Defendants' motion to dismiss (Docket No. 38). Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs opposed the motion (Docket No. 43). By leave of the court, Defendants filed a reply to Plaintiffs' opposition motion (Docket No. 45). After reviewing these submissions and the pertinent law, the court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 38.

**Civil No. 11-1507 (GAG)**                                   2

**I.     Legal Standard**

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), defendants may move to dismiss an action for failure to state a claim upon which relief can be granted. See FED.R.CIV.P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint alleged –but it has not show[n]– that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (quoting FED.R.CIV.P. 8(a)(2)) (internal quotation marks omitted).

**II.    Factual and Procedural Background**

On February 12, 2007, Zayas was recruited by Dickinson Caribe Ltd., as an engineer and quality supervisor at its plant in San Lorenzo, Puerto Rico ("San Lorenzo Plant"). As engineer and quality supervisor, she conducted investigations of the products manufactured at the plant to determine whether the products were ready to be released to the market. (See Docket No. 37 at 3.)

Plaintiffs allege that during her employment, Zayas' performance was excellent and that her performance evaluations reflected this. According to the complaint, Zayas' professional relationship with her associates and her supervisor Leroy Williams ("Williams") was excellent. Zayas was eventually promoted to manufacturing supervisor. Willaims was replaced by Ricardo Burgos

**Civil No. 11-1507 (GAG)** 3

("Burgos") as Zayas' supervisor.  In November 2008, Burgos was fired and replaced by an Englishwoman named Elena Sharp ("Sharp").

Plaintiffs allege that during the period when Sharp was general manager, as well as Zayas' immediate supervisor, she would constantly use the word "shit" when things did not come out as she expected.  The word was allegedly used during the manager's morning meetings, during lunch, in Sharp's office and throughout the San Lorenzo Plant halls.

Plaintiffs also contend that Sharp mocked and unjustly criticized Puerto Ricans by using denigrating expressions to refer to their habits and ways. Plaintiffs claim these denigrating comments were directed at Zayas and at other Puerto Rican co-workers. Plaintiffs allege that Sharp constantly criticized and corrected Zayas' pronunciation and use of the English language in front of other co-workers, thereby embarrassing her.  According to the complaint, Sharp entered Zayas' office one day and asked her, "What do you think if you saw a chicken running in the middle of the road?" (See Docket No. 37 at 5.) Plaintiffs allege that due to the nature of the question and Sharp's previous discriminatory behavior, Zayas' did not know what to say and responded that, if the chicken was on Road No. 30, she would not stop in the middle of the road to save it because she would be risking her life, as well as the life of other drivers.  Plaintiffs assert that although Zayas explained the dangerous nature of Road No. 30, Sharp took her response out of proportion and spent the day criticizing Puerto Ricans' uncivilized behavior.  It is alleged that during another staff meeting at the San Lorenzo Plant, Sharp entered and proceeded to mock a man she had just seen on the street riding a horse without a saddle, commenting on how she had never seen this in Plymouth, England.

According to the complaint, on October 8, 2009, Sharp gave Zayas a two out of five in her performance evaluation. Sharp attributed the low score to Zayas' disrespectful behavior towards her colleagues and associates. Plaintiffs also allege that Sharp did not authorize Zayas' participation in a leadership development training and that Sharp spent most of her time with two other San Lorenzo Plant executives, who at the time were in their early thirties. Plaintiffs allege that Sharp required Zayas to construct a development plan to be finished within the period of two weeks.  However, the day before the project was due, Zayas was called into the office of Becton Dickinson Human Resources Manager Viviana Mayo ("Mayo") and was fired without any explanation.  Zayas was

**Civil No. 11-1507 (GAG)**                              4

allegedly escorted while she gathered her personal belongings in front of other San Lorenzo Plant co-workers and was subsequently escorted out of the San Lorenzo Plant. Plaintiffs assert that when Zayas asked Mayo the reason for her discharge, Mayo responded it "is because you don't fit," which allegedly happened in front of her husband Santiago.

The complaint states that Zayas was forty-six at the time of her discharge. Her immediate supervisor was thirty-two years old. Zayas was replaced with a thirty-five year old Englishman named Matt Eggleston. Plaintiffs aver that her replacement does not posses Zayas' level of experience and qualifications. On August 18, 2010, Plaintiffs filed charges at the Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human Resources and the Equal Employment Opportunity Commission ("EEOC") and assert that co-defendant Becton Dickinson was notified of the filing charges. On April 8, 2011, Plaintiffs received the notice of right to sue by the EEOC. On June 3, 2011, Plaintiffs filed the instant complaint (Docket No.1), alleging that Zayas was discriminated against on account of her age and nationality. Zayas' husband seeks damages for allegedly having suffered mental anguish and monetary loss. On January 1, 2011, Defendants filed a motion to dismiss (Docket No. 23) alleging that the complaint failed to state a claim upon which relief could be granted. On January 27, 2012, Plaintiffs filed a memorandum in opposition to the motion to dismiss (Docket No. 31). On February 6, 2012, Plaintiffs filed their amended complaint (Docket No. 37). On February 8, 2012, Defendants filed their motion to dismiss the amended complaint (Docket No. 38). On February 24, 2012, Plaintiffs filed their response in opposition to the motion to dismiss the amended complaint (Docket No. 43). Lastly, on March 11, 2012, Defendants filed their reply to Plaintiffs' opposition to the motion to dismiss the amended complaint (Docket No. 45).

**III. Discussion**

    **A.   Title VII**

Title VII prohibits employers from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a discrimination claim in one of two ways: (1) through direct evidence of discrimination; or (2)

through the cumulative effect of indirect evidence of the employer's motivation. Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 909 (1st Cir. 1988). Absent direct evidence of intentional discrimination, a plaintiff must satisfy the burden-shifting-framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, a plaintiff has the initial burden of establishing a *prima facie* case of Title VII discrimination. Id. A plaintiff alleging discrimination on the basis of national origin must prove the following elements in order to establish a *prima facie* case through circumstantial evidence: "(1) he or she was a member of protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated non-protected employees." DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004) (citing Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995)).

In the instant matter, the court finds Plaintiffs have pled sufficient facts as to set forth a *prima facie* case of national origin discrimination. Plaintiffs allege that, as a Puerto Rican, Zayas was a member of a protected class. See Aguayo v. Napolitano, 810 F. Supp. 2d 406 (D.P.R. 2011) (finding Puerto Ricans members of protected class meeting first prong of *prima facie* Title VII national origin discrimination). Zayas suffered an adverse employment action as she was terminated from her employment. See Valle-Arce v. Puerto Rico Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011) ("[T]ermination of employment obviously is an adverse employment action . . . ."). As to the third prong, Plaintiffs contend that Zayas was qualified for her job and that she had a record of good evaluations and promotions during her time at the San Lorenzo Plant. See Zukowski v. St. Luke Home Care Program, 206 F. Supp. 2d 236, 241 (D.P.R. 2002). Furthermore, Plaintiffs claim Zayas was replaced with an Englishman. Accordingly, Defendants' motion to dismiss Plaintiffs' Title VII national origin discrimination claim is **DENIED.**

  **B.**  **ADEA**

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.§ 623(a)(1).

plaintiffs who do not have direct evidence regarding age discrimination may prove their case by using the burden shifting framework in McDonnell Douglas. See Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 n.2 (1st Cir. 2009). In an ADEA claim for discriminatory firing, this framework requires a plaintiff to show: (1) he or she was at least forty years old; (2) he or she was qualified for the position he or she had held; (3) his or her employer took adverse action against him or her; and (4) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services. Id. at 447 (citations omitted).

In the instant matter, Plaintiffs have set forth sufficient factual allegations to surpass the motion to dismiss stage. As discussed previously under Title VII, Plaintiffs have alleged that Zayas was qualified for the position she held and was discharged by her employer. Additionally, Plaintiffs contend that Zayas was forty-six years old at the time of her discharge and that her position was filled after her dismissal. Accordingly, Defendants' motion to dismiss Plaintiffs' ADEA claim is **DENIED.**

### C.   Law 100

Law 100 is the Puerto Rico anti-discrimination statute. P.R. Laws Ann. tit. 29, §§ 146 *et seq*. "[It] is the equivalent of the federal ADEA, providing for civil liability in age discrimination actions." Cardona Jimenez v. Bancomercico de Puerto Rico, 174 F.3d 36, 42 (1st Cir. 1999) (citations omitted). Law 100 "prohibits an employer from discriminating against an employee in the workplace by reason of age, race, color, religion, sex, social, or national origin or social condition." Id. As applied to age discrimination, Law 100 differs from the ADEA only with respect to how the burden-shifting framework operates. Id. at 42-43 (citations omitted).

Under Law 100, a plaintiff must satisfy two requirements to establish a *prima facie* case of discrimination: (1) he or she must demonstrate that he or she was actually or constructively discharged; and (2) he or she must allege that the decision was discriminatory. Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001).

As discussed above, Plaintiff was terminated from her employment and has alleged that her termination was for discriminatory reasons. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' Law 100 claim.

### D.     Law 80

Law 80 is Puerto Rico's wrongful dismissal statute. See P.R. Laws Ann. tit. 29, § 185a. The statute provides relief to employees who are terminated without good cause. Medina v. Adecco, 561 F. Supp. 2d 162, 174 (D.P.R. 2008) (citing P.R. Laws Ann. tit. 29, § 185a). According to Law 80, a dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." P.R. Laws Ann. tit. 29, § 185b. Plaintiffs allege that Zayas was fired without explanation, and that after inquiring as to the reasons behind her termination, she was told it was because she did not fit. Such allegations satisfy the pleading requirements for a Law 80 claim. Therefore, the court **DENIES** Defendants' motion to dismiss Plaintiffs' Law 80 claim.

### E.     Articles 1802 and 1803

The legal framework under Articles 1802 and 1803, "is that the provisions of the Civil Code are supplementary to special legislation." Rivera-Melendez v. Pfizer Pharm Inc., 747 F. Supp. 2d 336, 339 (D.P.R. 2010). The Supreme Court of Puerto Rico has held that as a general rule, "in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802 . . . ." Reyes-Ortiz v. McConnell Valdes, 714 F. Supp. 2d 234, 239 (D.P.R. 2010) (citations omitted) (internal quotation marks omitted). A plaintiff may only bring an additional Article 1802 claim if it is based on tortious or negligent conduct that is distinct from the conduct covered by the specific labor law. Id. (citations omitted). When a plaintiff's claims under Articles 1802 and 1803 claims are based on the same facts that give rise to the asserted causes of action under Law 100 and Law 80, the former are superceded by the latter. Id. (citations omitted). Here, Plaintiffs have set forth claims under Articles 1802 and 1803, based on the same set of facts as their Law 100 and Law 80 claims. Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' claims under Articles 1802 and 1803, and **DISMISSES** the same.

## IV.    Conclusion

For the reasons stated herein, the court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss (Docket No. 38). Plaintiffs' claims under Articles 1802 and 1803 claims are

**Civil No. 11-1507 (GAG)**                                8

**DISMISSED.** Remaining before the court are Plaintiffs' Title VII and ADEA claims, as well as their claims under Law 100 and Law 80.

**SO ORDERED**.

In San Juan, Puerto Rico this 23rd day of July, 2012.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge