1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**MARITZA ZAYAS-ORTIZ, et al.,**

**Plaintiffs,**

**v.**                                                    CIVIL NO. 11-1507 (GAG)

**BECTON DICKINSON CARIBE, LTD., et al.,**

**Defendants.**

## OPINION AND ORDER

Maritza Zayas-Ortiz ("Plaintiff"), her husband, and their conjugal partnership[1] bring suit against Becton Dickinson Caribe, Ltd., Becton Dickinson Puerto Rico, Inc., Becton Dickinson Co. ("BD"), and various insurance companies (collectively "Defendants") for alleged violations of anti-discrimination statutes. (See Docket No. 1.) Specifically, Plaintiff brings claims of age and national origin discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Plaintiff also brings claims for supplemental state law violations of Puerto Rico Law 80 of May 30, 1976 ("Law 80"), P.R. LAWS ANN. tit. 29, §§ 185a *et seq*.; Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. LAWS ANN. tit. 29, §§ 146 *et seq*.; and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 & 1803"), P.R. LAWS ANN. tit. 31, §§ 5141-5142. Defendants filed a motion to dismiss that was granted in part and denied in part. (See Docket No. 47.) Remaining before the court are Plaintiff's ADEA, Title VII, Law 80 and Law 100 claims. (See id.) On February 4, 2013, Defendants filed a motion for summary judgment seeking dismissal of the remaining claims. (Docket No. 105.) Plaintiff filed her opposition at Docket No. 115 and Defendants replied at Docket No. 145. After reviewing the parties' submissions and pertinent law

---

[1] The claims brought by Plaintiff's husband, Jose Santiago-Sierra, and their conjugal partnership are completely dependant upon the success of Plaintiff's claims. Therefore, the court only analyzes Plaintiff's claims in this opinion and order.

**Civil No. 11-1507 (GAG)**

the court **GRANTS** Defendants' motion for summary judgment at Docket No. 105.

**I.      Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21

**Civil No. 11-1507 (GAG)**

(1st Cir. 2006) (quoting <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    Defendants' Objection to Plaintiff's Statement of Uncontested Facts

As a preliminary matter, Defendants raise objections to Plaintiff's opposition to Defendants' statements of uncontested facts. Defendants claim Plaintiff runs afoul of the anti-ferreting rule. (<u>See</u> Docket No. 145 at 1.)  Local Rule 56(c) states:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts.  The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts.  Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule.  The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

L.CV.R. 56(c).  Rule 56 continues in subsection (e) to state, "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." L.CV.R. 56(e).  Together, these rules require an opposing party to admit, deny or qualify the facts of the moving party, and to explain the reasons for denials or qualifications with record citations.  If the opposing party wishes to include any additional facts to supplement the facts of the moving party, the opposing party must include those facts in a separate section.  L.CV.R. 56(c); <u>Malave-Torres v. Cusido</u>, 919 F. Supp. 2d 198, 207 (D.P.R. 2013) (disregarding additional facts contained within plaintiff's opposition to defendant's statement of uncontested facts).  This separate section containing additional facts is necessary to allow the moving party to reply to those additional facts and to allow the court to easily determine the disputed facts. <u>See</u> L.CV.R. 56(d) (governing reply statements of material facts). Therefore, a party may not include numerous additional facts within its opposition to the moving party's statements of uncontested facts. <u>See</u> <u>Acevedo–Parrilla v. Novartis Ex–Lax, Inc.</u>, 696 F.3d 128, 137 (1st Cir. 2012) (citing <u>Carreras v. Sajo, Garcia & Partners</u>, 596 F.3d 25, 32 (1st Cir. 2010) (holding party's argument that Local Rule 56(c) does not require separate section for additional facts unavailing)). It is within the district court's discretion to consider additional facts that are not included in a

3

**Civil No. 11-1507 (GAG)**

1   separate section. See Acevedo–Parrilla, 696 F.3d at 137.

2   Defendants do not expend much effort detailing Plaintiff's violations of this rule, but two

3   infringements are obvious.  First, Plaintiff has inserted a multitude of additional facts within its

4   response to Defendants' statement of uncontested facts.  (See Docket No. 115-1.)  The rule states

5   that a party may include additional facts in a separate section that accompanies its response to the

6   moving party's facts.  See L.Cv.R. 56(c).  No separate section of additional facts accompanies

7   Plaintiff's response.   Therefore, the additional facts Plaintiff inserted within her responses to

8   Defendants' facts shall be disregarded.  Secondly, Defendant argues Plaintiff fails to support her

9   facts with admissible evidence and citations to the record.  (See Docket No. 145 at 1.)  In developing

10  the Relevant Factual Background section of this opinion and order, the court has reviewed all record

11  citations and determined on a case-by-case basis whether opposing facts are properly cited and

12  admissible.

13  Finally, throughout Plaintiff's opposition to Defendants' facts, Plaintiff raises several

14  objections based on the Federal Rules of Evidence.  (See e.g., Docket No. 115-1 ¶ 9.)  Plaintiff's

15  chief objection is Defendants' use of the 2007-2008 Performance Review (Docket No. 105-24)

16  because the document is inadmissible hearsay. The document could be admissible based on the

17  business records exception contained in Federal Rule of Evidence 803(6).[2]  However, Defendants

18

19      [2]

20          A record  of an act, event, condition, opinion, or diagnosis if:

21          (A) the record was made at or near the time by--or from information
            transmitted by--someone with knowledge;

22

23          (B) the record was kept in the course of a regularly conducted activity of a
            business, organization, occupation, or calling, whether or not for profit;

24

25          (C) making the record was a regular practice of that activity;

26          (D) all these conditions are shown by the testimony of the custodian or
            another qualified witness, or by a certification that complies with Rule

27          902(11) or (12) or with a statute permitting certification; and

28                                          4

**Civil No. 11-1507 (GAG)**

1    never addressed this objection.  Assuming Defendants would have raised the business records

2    exception, the court can only allow such evidence in conjunction with testimony from the custodian

3    of records or some other qualified witness.  See FED. R. EVID. 803(6)(D).  Defendants fail to cite

4    such testimony; therefore, the court must sustain Plaintiff's objections to the use of the performance

5    reviews.  See U.S. v. Benavente Gomez, 921 F.2d 378, 383-84 (1st Cir. 1990) (holding records may

6    not be admitted under Rule 803(6) unless custodian or other qualified person authenticates records).

7    **III.     Relevant Factual Background**

8          Defendants offer 334 statements of uncontested facts, the vast majority of which Plaintiff

9    denies or qualifies.  The discrepancies are largely inconsequential disagreements over wording.[3]

10   Most of the genuine issues of material fact involve Plaintiff's job performance and the existence of

11   a hostile work environment, on which Plaintiff bases both her ADEA and Title VII claims.  The

12   court does not delve deeply into Plaintiff's job performance because it is clear Defendants meet their

13   burden of production, leaving the impetus on Plaintiff's demonstration of pretext.  Further, the

14   parties bitterly dispute whether Plaintiff met Defendants' legitimate job expectations.  For the

15   purposes of this motion, instead of detailing every discrepancy, the court simply views the facts in

16   the light most favorable to Plaintiff and assumes she acted assertively, but not out of line.  Because

17   the court finds there is insufficient evidence to demonstrate ageist or national origin based

18   discrimination, the court focuses the facts on those purported instances.  Additionally, Plaintiff's

19   assertion that the discriminatory acts related to age, national origin and hostile work environment

20

---

21          (E) neither the source of information nor the method or circumstances of
22          preparation indicate a lack of trustworthiness.

23          FED. R. EVID. 803(6)

24

25      [3]  An example of the unnecessary qualifications by Plaintiff is Defendants' statement of
    uncontested fact number thirty-two.  Defendants state, "[Plaintiff] claims she has a high tone of
26  voice and states it can be interpreted by others as screaming."  (See Docket No. 105-1 ¶ 32.)
    Plaintiff qualifies this by stating, "[Plaintiff] has a high tone of voice and [Plaintiff] said it could be
27  interpreted as screaming . . . ."  (Docket No. 115-1 ¶ 32) (emphasis in original).

28                                         5

Civil No. 11-1507 (GAG)

are all intertwined and referred to as "the whole situation." (See Docket No. 115 at 16.)  Plaintiff

fails to clearly point to evidence of age or national origin discrimination.

### A.    Age Discrimination

In her deposition, Plaintiff stated her age discrimination claim was based on two statements. The first, Eli Sharp ("Sharp"), Plaintiff's supervisor, told Plaintiff that the next few months would be tiring and demanding. (See Docket No. 105-4 at 10.)  Plaintiff took this to mean she was being called old.  Plaintiff explained that when Sharp told her there were a lot of expectations with the new management coming in, that Sharp was questioning her stamina and ability to handle the job. (See Docket No. 105-4 at 8.)  The second statement occurred after Plaintiff was terminated and Viviana Mayo ("Mayo") told Plaintiff that she "did not fit." (See Docket No. 105-4 at 12.)  In her opposition to Defendants' statement of uncontested facts, Plaintiff vigorously defended her position that all the discrimination is wrapped into one, and that all the evidence related to national origin discrimination and hostile work environment also applies to her discrimination claims. (See Docket No. 115-1 ¶¶ 257-262.)

### B.    National Origin Discrimination

To support her nation origin claim, Plaintiff specifies six incidents that she felt were discriminatory.

#### 1.    The Blocking Incident

Plaintiff states Sharp "blocked" her, meaning Sharp gave her the silent treatment.  Plaintiff claims Sharp would ignore her, not say good morning to her, or go straight to her office and shut the door without acknowledging Plaintiff in the morning. (See Docket No. 105-3 at 13.)  This treatment resulted in Sharp not talking to Plaintiff for a span of two to three weeks, unless necessary. (See Docket No. 105-3 at 13.) Plaintiff also states that Sharp did not always take a frosty attitude towards her, as the two spoke at staff and production meetings. (See Docket No. 105-3 at 20.)  Plaintiff thought this blocking was related to work issues. (See Docket No. 105-4 at 7.)

#### 2.    Bareback Riding

6

**Civil No. 11-1507 (GAG)**

The second incident involves Sharp's description of a saddle-less horse rider.  On her way to work one morning, Sharp saw a man riding a horse without a saddle and stated that she was unaccustomed to seeing people riding bareback because in England people used saddles.  (See Docket No. 115-1 ¶ 285.)  Sharp performed a humorous rendition of this in her office.  (See Docket No. 105-4 at 18.)  While Sharp, and apparently other coworkers who were Puerto Rican, thought this was funny, Plaintiff took this as an insult to Puerto Ricans.  (See id.)  Plaintiff testified that the rest of the team laughed at Sharp's rendition.  (See id.)

### 3.    Why Did the Chicken(s) Cross the Road?

Also on her way to work one morning, Sharp saw a family of chickens and baby chicks crossing the road.  However, these "pollitos" never made it to the other side.  Sharp was disheartened that other drivers drove through the family without slowing or stopping.  Sharp asked Plaintiff what she would do if confronted by a family of chickens crossing the road.  Plaintiff responded that she would not stop for them because of the dangers involved in stopping on the road.  (See Docket No. 105-3 at 24-26.)

### 4.    Correction of Pronunciation

When Plaintiff spoke in English, Sharp would correct her, teaching her the proper way to pronounce words.  (See Docket Nos. 105-1 ¶ 295; 115-1 ¶ 295.)  Plaintiff states she spoke less often because of these corrections.  (See id.)  Employees would also correct Sharp's Spanish, as she was learning at the time.  (See Docket No. 105-6 at 2-3.)  Members of the staff discussed Sharp's use of certain words and phrases and commented on her accent, but Plaintiff states she did not partake in those discussions.  (See Docket No. 105-1 ¶¶ 300-07; 115-1 ¶¶ 300-07.)  Plaintiff also claims Sharp mocked her when she made announcements over the public announcement system.  (See Docket No. 105-1 ¶ 303; 115-1 ¶ 303.)

### 5.    "Shit"

Plaintiff asserts that the discrimination started when Sharp began using the word "shit" in the office.  (See Docket No. 105-5 at 22.)  The use of this word was not directed at any one person

Civil No. 11-1507 (GAG)

1   in particular and was often used so say, "No shit, Sherlock," to describe a very obvious situation.

2   (See id. at 23.)  Plaintiff states she never heard Sharp use the word against any particular individual,

3   but to describe particular circumstances.  (See Docket No. 105-5 at 24.)  Sharp was not the only one

4   to use this expletive, as Plaintiff admits that she used the Spanish equivalent at times.  (See Docket

5   No. 105-5 at 23.)  Plaintiff's main concern with the use of this word is that "it created [] an

6   environment of stress."  (Docket No. 105-5 at 23, L. 21.)  When others used the expression, "No

7   shit, Sherlock," Plaintiff did not feel as though she was being discriminated against.  (Docket No.

8   105-5 at 25.)

9           6.      The Jim Sanyi Incident

10          Jim Sanyi ("Sanyi") was supervisor to the plant manager.  (See Docket Nos. 105-1 ¶ 324;

11  115-1 ¶ 324.)  While on a conference call with the plant manager and Plaintiff, Sanyi expressed his

12  dissatisfaction with the production results.  To pressure the employees to increase production levels,

13  Sanyi told Burgos to "step on them."  (See Docket Nos. 105-1 ¶ 327; 115-1 ¶ 327.)  Sanyi later

14  arrived in Puerto Rico and Plaintiff complained to Sanyi about the use of the phrase.  Sanyi

15  apologized.  (See Docket Nos. 105-1 ¶ 329; 115-1 ¶ 329.)

16  **IV.    Discussion**

17          When there is no direct evidence of discrimination, Plaintiff may avail herself of the familiar

18  burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03

19  (1973).  See Melendez, 622 F.3d at 50.  Once Plaintiff has made the *prima facie* showing for

20  discrimination, a rebuttable presumption is created.  See Martinez-Burgoz v. Guayama Corp., 656

21  F.3d 7, 12 (1st Cir. 2011).  This presumption is eliminated once Defendants articulate a non-

22  discriminatory reason for the adverse action.  See id.  The final stage places the burden back on

23  Plaintiff to demonstrate the adverse action was taken due to discrimination, and the non-

24  discriminatory reason proffered by Defendants was a mere pretext.  However, the standard for

25  Plaintiff to rebut Defendants' legitimate reason is more demanding than the rather lax standard

26  applied to Plaintiff's *prima facie* case.  See Id. (citing Kosereis v. Rhode Island, 331 F.3d 207, 213

27

28                                                    8

Civil No. 11-1507 (GAG)

(1st Cir. 2003)).  Plaintiff may demonstrate pretext by establishing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." Id. at 14 (citing Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (internal quotation marks omitted)).

The disposition of this case lies in the third prong of the burden shifting test -whether Plaintiff has marshaled sufficient evidence to demonstrate pretext.  As such, the court assumes *arguendo* that Plaintiff has made out a *prima facie* case for national origin and age discrimination and that Defendants have proffered a legitimate, non-discriminatory reason for Plaintiff's termination.  The court will directly analyze whether Plaintiff has met her burden of demonstrating Defendants' actions were merely pretext to cover underlying discriminatory animus.  See Quinones v. Buick, 436 F.3d 284, 289 (1st Cir. 2006) (affirming grant of summary judgment after district court omitted analysis of first two stages of burden-shifting analysis).

A.      Age Discrimination

Plaintiff's age discrimination claim falls flat.  There is simply no evidence that Plaintiff was terminated because of her age.  Under the ADEA, Plaintiff has the burden of establishing that her age was the but-for cause of her termination.  See Cruz v. Bristol-Myers Squibb Co., PR, Inc., 699 F.3d 563, 571 (1st Cir. 2012).  As the First Circuit stated, "The ultimate question on summary judgment in this ADEA case is 'whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age.'" Velez v. Thermo King de P. R., Inc., 585 F.3d 441, 452 (1st Cir. 2009) (quoting Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007)).  Here, no reasonable factfinder could find that age was the but-for cause of Plaintiff's termination.

Plaintiff only relies on two statements regarding her age.  One statement, that Plaintiff "did not fit," occurred after she had been terminated.  This statement, has no connection to age and no inference can be made of animus based on Plaintiff's age.  Only Plaintiff's subjective interpretation

**Civil No. 11-1507 (GAG)**

links this statement to ageism.  Even if such an inference could be made, this statement would be classified as a stray remark as the statement was made by a non-decisionmaker.  See Bennett v. Saint-Gobain Corp., 507 F.3d 23, 29 (1st Cir. 2007) (holding stray remark by non-decisionmaker insufficient to defeat summary judgment).

Sharp telling her that the next few months would be tiring and demanding contains no direct or indirect reference to Plaintiff's age.  Plaintiff interpreted this to mean that Sharp was questioning her ability to perform at her age, but there is no evidence to support such a finding.  Plaintiff must marshal sufficiently probative evidence to defeat summary judgment.  See Id. at 30.  Here, the evidence is not probative because it does not relate to age and Plaintiff provides no evidence to support her conclusion that this was a thinly veiled remark about her age.  Plaintiff cannot resist summary judgment with merely unsupported conclusions.  See Id. (holding plaintiff may not rely exclusively "on bald assertions, unsupported conclusions, or optimistic surmises" to defeat summary judgment).

These statements are insufficient to demonstrate Plaintiff's age discrimination claims.  Therefore, the court **GRANTS** Defendants motion to dismiss Plaintiff's ADEA claim.

## B.   National Origin Discrimination

At the third stage of the burden shifting analysis, Plaintiff must demonstrate, "by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory."  Lockridge v. The Univ. of Maine Sys., 597 F.3d 464, 470 (1st Cir. 2010) (citing Smith v. Stratus Computer, 40 F.3d 11, 16 (1st Cir. 1994)).  That is to say, Plaintiff must demonstrate that it is more likely than not she was terminated because she was Puerto Rican, rather than for failure to follow company policy. Plaintiff fails to make this showing.  Plaintiff supports her claim for national origin discrimination on six incidents; however, the court cannot infer discriminatory animus from nearly any of them. First, the blocking incident is wholly focused on Plaintiff's job performance.  Plaintiff admits she felt as though this cold relationship was due to her job performance.  While Sharp may have been

**Civil No. 11-1507 (GAG)**

rude and short with Plaintiff, there is nothing in the record that allows the inference that this behavior was due to discriminatory animus.  This conduct does not even give rise to a hostile work environment.  See Colon-Fontanez v. Mun. of San Juan, 660 F.3d 17, 44 (1st Cir. 2011) (holding no hostile work environment for practically the same behavior).  It is well-established that anti-discrimination statutes are not to be interpreted as a general civilty statute.  See id. (citing Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003)).  Even if Sharp treated Plaintiff exactly how Plaintiff describes, no violation of Title VII exists.

Similarly, the court cannot infer discriminatory animus because Sharp described or made fun of a man riding a horse without a saddle.  At best this can be interpreted as Sharp remarking on a cultural norm she would not encounter in England and mocking it.  There is still no way to impute animus from this situation against Puerto Ricans, particularly Plaintiff.  Sharp's description of the events, her re-enactment, and statement that she does not see such things in England do not allow for the inference that she terminated Plaintiff due to her national origin or that she harbors animus towards Puerto Ricans.  There is no evidence that Sharp meant anything beyond that she was simply shocked by seeing a saddle-less rider on her way to work.

The same can be said regarding the incident with the chickens and the use of the word shit.  There is no way to interpret Sharp's surprise at a driver running over a family of small chicks as discriminatory animus towards Puerto Ricans.  No connection exists between this anecdote and Plaintiff's termination.  Likewise, Sharp's use of an expletive for certain situations is insignificant.  It was not used solely towards Plaintiff or Puerto Ricans.  The use of the word and the phrase may have been interpreted by Plaintiff as discriminatory, but no rational person could infer the use of this phrase, as described, to be discriminatory.  While it may be inappropriate or insensitive, it is not discriminatory.  See Russo v. Midland Paper Co., Case No. 09 C 07739, 2011 WL 5025238, at *4 (N.D. Ill. Oct. 21, 2011) (holding use of expletive not discriminatory when no evidence connects the statement to plaintiff's termination) (citing Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996).

11

**Civil No. 11-1507 (GAG)**

1    The Jim Sanyi incident is also legally inconsequential.  The phrase "step on them," is not

2    discriminatory.  Assuming Plaintiff understands Sanyi to have meant step on Puerto Ricans because

3    they were not meeting production goals, this remark is ambiguous at best.  Nothing in the record ties

4    this statement with national origin.   This statement was not accompanied by any statement

5    suggesting that production was low because of Puerto Rican workers.  See Russo, 2011 WL

6    5025238, at *4.  Plaintiff states that she spoke with Sanyi about the statement and he apologized.

7    Finally, this event occurred prior to Sharp's arrival, the supervisor whom Plaintiff asserts

8    discriminated against her.  (See Docket Nos. 105-1 ¶ 325; 115-1 ¶ 325.)

9    Lastly, Plaintiff claims Sharp's language corrections resulted in her speaking less during the

10   management meetings, although she spoke when necessary.  National origin is implicated when an

11   employee speaks with a heavy accent, connoting a different nationality than others.  But correcting

12   an individual's pronunciation is not the type of evidence that rises to the level of discriminatory

13   comments.   This evidence does not fit the mold of discriminatory comments made by a decision-

14   maker.  See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000)

15   (stating plaintiff may demonstrate pretext by "show[ing] that discriminatory comments were made

16   by the key decisionmaker or those in a position to influence the decisionmaker.") (citing

17   Mulero–Rodríguez v. Ponte, Inc., 98 F.3d 670, 675–76 (1st Cir. 1996)).  Plaintiff supports her

18   national origin claim on this theory. (See Docket No. 115 at 4.) These corrections do not constitute

19   discrimination.  Rather, this conduct best fits the mold of a hostile work environment theory of

20   discrimination, the subject of a later section of this opinion.

21   In conclusion, these instances of alleged discrimination, viewed in the light most favorable

22   to Plaintiff, do not sufficiently demonstrate a claim for national origin discrimination.  No reasonable

23   factfinder could impute discriminatory animus based on nationality from these incidents.  The court

24   **GRANTS** Defendants' motion to dismiss Plaintiff's Title VII claims.

25   **C.    Hostile Work Environment Claim**

26   Additionally, Plaintiff asserts a separate claim for hostile work environment.  Seemingly,

27

28                                                          12

**Civil No. 11-1507 (GAG)**

1    Plaintiff asserts this claim because, "All the incidents and acts by Sharp against [Plaintiff] are

2    intertwined as discrimination by age or origin or by constituting a hostile work environment."

3    (Docket No. 115 at 16.)  While Plaintiff asserts her claims are intertwined and cannot be separated,

4    the court believes the claims are separate and distinct.  At this juncture it is incumbent on the court

5    to determine whether the evidence marshaled by Plaintiff constitutes a hostile work environment.

6    There is no remedy for a stand alone hostile work environment claim.  See Nat'l R.R. Passenger

7    Corp. v. Morgan, 536 U.S. 101, 115-16 (2002) (holding hostile work environment sufficient to meet

8    the adverse employment action prong of Title VII); Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir.

9    2008) (recognizing hostile work environment claims arising under ADEA).

10         "Most hostile work environments are bred from an ongoing series of harassing incidents;"

11    however, "a single act of harassment may, if egregious enough, suffice[s] to evince a hostile work

12    environment." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005).  To demonstrate a hostile

13    work environment, the environment must be "'permeated with discriminatory intimidation, ridicule,

14    and insult that is sufficiently severe or pervasive to alter the terms and conditions of victim's

15    employment' to be actionable under Title VII.'" De Jesus, 211 F. App'x. at 11 (quoting Faragher v.

16    City of Boca Raton, 524 U.S. 775, 787-88 (1998)).  The conduct must be both objectively and

17    subjectively abusive to sufficiently affect the work conditions to violate Title VII.  See Harris v.

18    Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).  Objectively, the conduct must be sufficiently severe

19    or pervasive so that a reasonable person "would find it hostile or abusive."  See id.  Conduct that

20    does not meet this threshold is beyond the scope of Title VII.  Likewise, the plaintiff must

21    "subjectively perceive the environment to be abusive," or else the terms and conditions of

22    employment have not changed, and a violation of Title VII has not occurred.  See id. at 11-12.

23         In determining whether multiple acts meet the sufficiently severe or pervasive standard, the

24    court evaluates several factors: "the severity of the conduct, its frequency, whether it is physically

25    threatening or not, and whether it interfered with the victim's work performance." Gerald v. Univ.

26    of Puerto Rico, 707 F.3d 7, 18, (1st Cir. 2013) (citing Bhatti v. Trs. of Boston Univ., 659 F.3d 64,

27

28                                         13

**Civil No. 11-1507 (GAG)**

73-74 (1st Cir. 2011)).  These factors are not rigidly applied with precision.  <u>See id.</u>  The court's "role is 'to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment.'"  <u>Colon-Fontanez</u>, 660 F.3d at 44 (quoting <u>Noviello</u>, 398 F.3d at 92).

Plaintiff points to six incidents and two statements which she claims exemplifies Defendants' discrimination.  These incidents do not rise to the severity or pervasiveness necessary to materially change her working conditions.  In the blocking incident, Plaintiff claims Sharp was rude, did not acknowledge her in the morning, and did not talk to her for a stretch of two or three weeks, except for meetings.  Plaintiff admits she thought this was due to work issues.  The court finds no discriminatory animus in this conduct.  Sharp may have acted rudely and inconsiderately towards Plaintiff, but that conduct, by itself, does not give rise to an inference of discriminatory animus.  <u>See Colon-Fontanez</u>, 660 F.3d at 44.  Further, the bareback riding, chicken-crossing, and Sanyi incidents were isolated and did not materially affect Plaintiff's work environment. The use of the expletive and the correction of pronunciation were the only instances of any substantial duration. But these instances are insufficient to demonstrate severe and pervasive behavior.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -an environment that a reasonable person would find hostile or abusive- is beyond Title VII's purview." <u>Harris</u>, 510 U.S. at 21.  The behavior Plaintiff endured simply does not rise to the level necessary to sustain a hostile work environment claim under the ADEA or Title VII.

### D.    Law 100 and Law 80 Claims

Plaintiff's Law 100 and Law 80 claims are subjected to a similar analysis.  Law 100 is the Puerto Rico anti-discrimination statute.  <u>See</u> P.R. LAWS ANN. tit. 29, § 146.  The analysis under the ADEA and Law 100 is practically the same.  <u>See</u> <u>Mojica v. El Conquistador Resort and Golden Door Spa</u>, 714 F. Supp. 2d 241, 262 (D.P.R. 2010).  "As applied to age discrimination, [Law 100] differs from the ADEA only with respect to how the burden-shifting framework operates."  <u>Davila</u>, 498 F.3d at 18 (citing <u>Cardona Jimenez v. Bancomerico de P.R.</u>, 174 F.3d 36, 42 (1st Cir. 1999)).  "On

14

**Civil No. 11-1507 (GAG)**

1  the merits, age discrimination claims asserted under the ADEA and under Law 100 are

2  coterminous." Davila, 174 F.3d at 17-18 (citing Gonzalez v. El Dia, 304 F.3d 63, 73 (1st Cir.

3  2002)).  Therefore, Plaintiff's Law 100 claim fails for the same reasons her ADEA claim fails.

4  Law 80 provides a remedy for unjust dismissal.  See P.R. LAWS ANN. tit. 29, § 185b.  A

5  dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause

6  relative to the normal operation of the establishment." P.R. LAWS ANN. tit. 29, § 185b.  The statute

7  allows termination for a number of reasons related to the employee's job performance, including an

8  employee's improper and disorderly conduct, negligent attitudes toward her work, and violations of

9  the employer's policies.  See id.; Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17,

10 28 (1st Cir. 1998).  The employer bears the ultimate burden to prove that it had just cause to

11 terminate the employee.  See P.R. LAWS ANN. tit. 29, § 185k; Alvarez-Fonseca, 152 F.3d at 28.  Law

12 80 also follows the burden-shifting scheme followed by Title VII and the ADEA.  See Cruz, 699

13 F.3d at 572.  As previously held, Plaintiff has not provided any evidence inferring that her

14 termination was due to any type of discrimination.  Defendants sufficiently stated their reasons for

15 terminating Plaintiff's employment and supported their decision.  After such a showing, it is

16 Plaintiff's burden to rebut this showing.  Plaintiff fails to make this showing.  Therefore, the court

17 **GRANTS** Defendants' motion for summary judgment on the Law 100 and Law 80 claims.

18 **IV.    Conclusion**

19 For the foregoing reasons, the court **GRANTS** Defendants' motion for summary judgment.

20 (Docket No. 105.)

22 **SO ORDERED**

23 In San Juan, Puerto Rico this 13th day of September, 2013.

24 *S/Gustavo A. Gelpí*

25 GUSTAVO A. GELPÍ

26 United States District Judge

28 15